# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50308
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 29, 2016

Lyle W. Cayce
Clerk

MARK MAHAVIER, as Power of Attorney for Willard Mahavier,

Plaintiff - Appellant

v.

PNC BANK, NATIONAL ASSOCIATION,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-704

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Willard Mahavier defaulted on his home mortgage held by PNC Bank. PNC posted the property for foreclosure. Mahavier then sued PNC in state court, seeking to enjoin the foreclosure. Mahavier claimed, among other things, that PNC breached its contract with Mahavier by failing to properly credit payments that it had received from him. PNC moved for summary judgment, which the district court granted. The district court held that Mahavier could

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50308

not bring a claim for breach of contract because he had breached his contract with PNC first by defaulting on his payment obligations. The court dismissed his remaining claims on other grounds.

Mahavier now appeals, challenging only the district court's dismissal of his breach-of-contract claim. We review de novo a district court's grant of a motion for summary judgment. *See Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015).

The summary judgment record shows the following undisputed facts. In August 2000, Mahavier took out a residential mortgage to buy a house in San Antonio. In February 2006, he refinanced the mortgage with Merrill Lynch. To provide security for the refinanced loan, Mahavier signed two documents in Merrill Lynch's favor: (1) a deed of trust, which secured the loan with a lien on the house, and (2) a "mortgage pledge agreement for securities account," which secured the loan with a security interest in Mahavier's Merrill Lynch brokerage account, then worth about fifty thousand dollars. Merrill Lynch later assigned the loan and the related security interests to PNC.

On appeal, Mahavier challenges the district court's dismissal of his claim against PNC for breach of the deed of trust. To prove his breach-of-contract claim under Texas law, Mahavier must be able to show, among other things, that he "perform[ed] or tendered performance" under the deed of trust. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App. 2014). Here, the deed of trust provided, in relevant part, that "[Mahavier] shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." In 2010, Mahavier defaulted on the note. By May 2013, he was "seriously in default." Thus, by May 2013, Mahavier was in breach of the deed of trust—which means he cannot establish the second element of his breach-of-contract claim. So the district court properly dismissed it.

2

## No. 15-50308

In response, Mahavier argues that money taken by PNC from his brokerage account cured his default. It did not. In 2013, when Mahavier had been in default for three years, PNC exercised its power under the pledge agreement to liquidate the brokerage account, then worth $56,680.12, and apply the proceeds to the loan.

The pledge agreement provides, in relevant part:

6. Remedies Upon Default Under Loan Documents.

(a) In the event that Borrower fails to make any payment due under the Loan or otherwise is in default under the Loan Documents[1] (an "Event of Default"), [lender] may at its option sell or otherwise dispose of all or any part of the [account] and may apply to the proceeds . . . to any and all amounts due and owing on the Loan . . .

(d) Neither the sale or other disposition of Collateral by [Lender] . . . shall be deemed (i) to cure any default under the Loan Documents; (ii) a tender of arrearages or of performance sufficient to require reinstatement of the Loan; (iii) a waiver of acceleration or of the right to accelerate the Loan; or (iv) a waiver of any of [Lender's] other rights under the Loan Documents.

PNC applied $37,184.68 from the brokerage account to Mahavier's mortgage and sent Mahavier a check for the remaining $19,495.44. Of the amount that PNC applied to the mortgage, $19,047.28 went to interest and $18,137.36 to outstanding principal. The brokerage-account funds reduced Mahavier's principal balance from $112,210.48 to $93,073.06. By the plain terms of the pledge agreement, PNC was permitted, in the event of default, to apply the brokerage-account funds to Mahavier's loan. That is exactly what PNC did. The pledge agreement also expressly provides that those funds would not be "deemed . . . to cure any default." Thus, Mahavier has not shown that the

---

[1] "Loan Documents" is defined as the "[N]ote, the Security Document (as defined below), any Assignment of Lease and any other documents (other than this Agreement) executed by Borrower and delivered to [lender], evidencing or securing the Loan."

No. 15-50308

district court erred by finding him in default and therefore in breach of his agreement with PNC. That means he also has not shown that district court erred by holding that his breach-of-contract claim was barred by his own breach.

The judgment of the district court is affirmed.